UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NIKUNJ PATEL and ANUJA PATEL, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 4:22-cv-11128-IT |
| | * | |
| UR MENDOZA JADDOU, Director, U.S. | * | |
| Citizenship and Immigration Services; and | * | |
| ANTONY BLINKEN, Secretary, U.S. | * | |
| Department of State, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| ************************************ | * | |
| | * | |
| MONISHA GUPTA and SWAPNIL VIJAY | * | |
| KUMAR GADKARI, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:22-cv-11374-IT |
| | * | |
| UR MENDOZA JADDOU, Director, U.S. | * | |
| Citizenship and Immigration Services; and | * | |
| ANTONY BLINKEN, Secretary, U.S. | * | |
| Department of State, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 27, 2023

TALWANI, D.J.

Plaintiffs Nikunj Patel, Anuja Patel, Monisha Gupta, and Swapnil Gadkari are Indian

nationals in the United States who have filed Adjustment of Status applications seeking to

convert their immigration status from nonimmigrants to lawful permanent residents. Plaintiffs'

applications have been pending for almost two years.

Plaintiffs filed two separate actions, captioned above, challenging the delay and the policies that enabled the delay. The court consolidated the actions for pretrial proceedings.[1] Pending before the court are Plaintiffs' Consolidated Motion for Partial Summary Judgment [Doc. No. 55] and Rule 56(d) Motion [Doc. No. 65][2] and Defendants' Motion to Dismiss [Doc. No. 59] and Motion for Summary Judgment [Doc. No. 58]. For the following reasons, Defendants' Motion to Dismiss [Doc. No. 59] is GRANTED, and the remaining motions are DENIED as moot.

## I.   Background

### A.   The Immigration and Nationality Act and the Visa Allocation Process

#### 1.   Types of Visas under the Immigration and Nationality Act

The Immigration and Nationality Act (the "INA"), 8 U.S.C §§ 1101, et seq., governs the process for foreign nationals to obtain visas for entry and temporary or permanent residence in the United States. A non-immigrant visa allows a recipient to enter and reside temporarily in the United States for certain purposes. One employment-based non-immigrant visa is an H-1B visa, which allows for temporary residence for work.

Immigrant visas, by contrast, are intended for foreign nationals who seek to live in the U.S. permanently. 8 U.S.C. §§ 1101(a)(16), (20). One employment-based immigrant visa is an EB visa. 8 U.S.C. § 1151. EB visas are divided into five preference categories: priority workers (EB1); members of professions holding advanced degrees or of exceptional ability (EB2); skilled workers, professionals, and other workers (EB3); special immigrants, comprised mainly of

---

[1] Except where specifically noted otherwise, all docket numbers refer to the earlier filed case, Patel et al. v. Jaddou et al., 4:22-cv-11128.

[2] Plaintiffs' motions are also filed in Gupta, et al. v. Jaddou, et al., 1:22-cv-11374, as Doc. No. 19 and Doc. No. 21, respectively.

special immigrant juveniles, ministers of religion, and religious workers (EB4); and employment creation immigrants (EB5). 8 U.S.C. § 1153(b). United States Citizenship and Immigration Services ("USCIS") coordinates with the U.S. Department of State ("DOS") to allocate and distribute immigrant visas.

### 2.   INA Limitations on EB Visas

For each fiscal year, the INA limits the number of people from each visa category who can receive immigrant visas or otherwise acquire long-term permanent resident status. See 8 U.S.C. § 1151. Currently, there is an annual limit of 140,000 EB visas across all five employment categories. See 8 U.S.C. § 1151(c)-(d). Congress divides the overall number of EB visas available each year between the five EB categories based on fixed percentages, with 28.6% available for each of categories EB1, EB2, and EB3, and 7.1% available for each of categories EB4 and EB5. See 8 U.S.C. § 1153(b).

Congress has also implemented a per-country cap of 7% in each employment-based preference category. 8 U.S.C. § 1152(a)(2); Ex. A, Decl. of Andrew Parker ("Parker Decl.") ¶ 9 [Doc. No. 60]. In other words, no more than 7% of the visas in each preference category may be given to foreign nationals from certain countries. Currently, the countries impacted by the 7% cap are China, India, Mexico, and the Philippines. Id.

### 3.   Steps for Seeking Employment-Based Lawful Permanent Residence

Generally, foreign nationals seeking employment-based lawful permanent residence and the employers seeking to employ them must complete the following steps. First, a U.S. employer must file a labor certification with the U.S. Department of Labor ("DOL") demonstrating that there are no able, willing, qualified, and available U.S. citizens to fill a particular position. Second, after a labor certification application has been approved by DOL, the employer must file

Form I-140, Immigrant Petition for Alien Worker with USCIS. The Form I-140 petition demonstrates the employer's commitment to employ the foreign national and that the foreign national has met the job qualifications at the time the labor certification was filed. Finally, after USCIS approves the employer's Form I-140 petition, the foreign national must file a Form I-185 application for Adjustment of Status ("AOS"). An applicant whose AOS application is successfully adjudicated obtains an immigrant visa, receives a green card, and becomes a lawful permanent resident of the United States.[3]

Importantly, the date on which the labor certification was filed, or, if no labor certification was required, the date on which Form I-140 was filed, determines the foreign national's priority date for purposes of obtaining an immigrant visa and lawful permanent resident status. USCIS Policy Guide, Vol. 7A, Ch. 6, § C(3); 8 U.S.C. § 1152(a)(5).

    4.   Adjustment of Status and Visa Availability

The statute permitting "Adjustment of Status," 8 U.S.C. § 1255(a), provides:

> The status of a[] [noncitizen] who was inspected and admitted or paroled into the United States may be adjusted by the [Secretary of Homeland Security],[4] in his discretion and under such regulations as he may prescribe, to that of a[] [noncitizen] lawfully admitted for permanent residence if (1) the [noncitizen] makes an application for such adjustment, (2) the [noncitizen] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) **an immigrant visa is immediately available to him at the time his application is filed**.

---

[3] Lawful Permanent Residence is "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws . . . ." 8 U.S.C. § 1101(a)(20). After five years as a lawful permanent resident, a foreign national may apply for naturalization. 8 U.S.C. § 1427.

[4] The text of § 1255(a), as enacted, gives the Attorney General this authority, but the authority has since been transferred to the Secretary of Homeland Security. See 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.

(emphasis added). To accept an Adjustment of Status application, USCIS requires a visa number[5] to be "current" or "immediately available" to the applicant at the time of both filing and approval. Patel Am. Compl. ¶ 36 [Doc. No. 46]; USCIS Policy Guide, Vol. 7A, Ch. 4, § B(1). An immigrant visa is considered available to an applicant if the applicant's priority date—the date on which either the labor certification or Form I-140 was filed—is "current." See USCIS, Visa Availability and Priority Dates, https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-and-priority-dates (last visited Sept. 26, 2023). A priority date is "current" when either visa numbers are immediately available to all applicants in a given preference category, or the applicant's priority date is prior to the cut-off date for the relevant visa and country category published in the Visa Bulletin.[6]

When the number of available visas in a particular employment-based category exceeds the demand for visas in that category, the remaining visas can be used irrespective of the per-country limit and thus flow to applicants with the earliest priority dates. 8 U.S.C. § 1152(a)(5). Alternatively, if the demand for a particular category or country exceeds the number of available visas, the category or country is deemed "oversubscribed." USCIS Policy Guide, Vol. 7A, Ch. 6, § C(4). In that case, USCIS establishes a visa availability cut-off date, which is the priority date of the first applicant who could not be accommodated with a visa number that year. Patel Am. Compl. ¶ 37 [Doc. No. 46].

---

[5] Defendants explain that "[a] visa number is . . . a 'budgetary device' employed by the State Department in order to avoid exceeding the whole worldwide and per-country limits established by Congress." Def.'s Mem. 4 n.5 [Doc. No. 63].

[6] To notify potential AOS applicants of the current availability of immigrant visas, DOS publishes a monthly Visa Bulletin to indicate the number of available visas for each preference category.

If a category or country is deemed "oversubscribed," only individuals with a priority date earlier than the cut-off date for their country or category may be approved for adjustment of status or issued an employment-based visa. USCIS Policy Guide, Vol. 7A, Ch. 6, § C(4). DOS makes the cut-off dates available in the Final Action Dates chart in the monthly Visa Bulletin. Id. USCIS consults DOS's Visa Bulletin when determining whether to accept an Adjustment of Status application.

5. Visa "Retrogression"—The Challenged Practice

Visa availability can vary significantly, so it is common for a visa number to be immediately available at the time an applicant files an application for an Adjustment of Status, but not at the time the application is ready to be adjudicated. Patel Am. Compl. ¶ 30 [Doc. No. 46]. If a visa is no longer immediately available for an applicant's priority date, USCIS and DOS will not issue a final decision on that applicant's AOS application and instead will hold the application in abeyance until a visa is immediately available and the applicant's priority date becomes current again. Patel Am. Compl. ¶ 41 [Doc. No. 46]; USCIS Policy Guide, Vol. 7A, Ch. 6, § C(5). Plaintiffs refer to this practice as "retrogression."

Because USCIS and DOS will not issue a final decision on an application if a visa is no longer available when the application is approved, whether USCIS assigns a visa at the time of filing or waits until the individual is approved for a visa can significantly alter an individual's immigration timeline. The time it takes to recover from retrogression can vary from a few months to years. Patel Am. Compl. at ¶ 63 [Doc. No. 46]. For example, in 2012, immigrant visas for the EB2 category regressed from individuals who applied on or by May 1, 2010, to those who applied on or by August 15, 2007. Id. at ¶ 167. As a result, Indian nationals who filed on or before May 1, 2010, had to wait until 2021 to be eligible for an adjustment of status. Id.

B.      *The Plaintiffs*

All four Plaintiffs are Indian nationals who have lived in the United States for many years. Patel Am. Compl. ¶¶ 1-2, 76; Gupta Am. Compl. ¶¶ 1-2, 76.[7] The Patels and Monisha Gupta all maintain lawful H-1B non-immigrant status. Patel Am. Compl. ¶ 75; Gupta Am. Compl. ¶ 75. Swapnil Gadkari is lawfully present in the U.S. based on his pending Form I-485 and is working here pursuant to his (c)(9) Adjustment of Status employment authorization document. Gupta Am. Compl. ¶ 75.

The priority date for the Patels' AOS applications is June 26, 2014, when Nikunj Patel's employer filed for a labor certification. Patel Am. Compl. ¶¶ 77, 79. The initial immigrant visa application was filed as an EB2. Id. at 80. At that time, the visa was not "current." Id. at ¶ 81. In an attempt to get a "current" visa sooner, the employer filed two more immigrant visa applications. Id. at ¶¶ 82, 84. On October 27, 2020, the Patels filed Forms I-485 based on the EB3 preference category. Id. at ¶ 86. At that time, their priority numbers were current and there were immediately available immigrant visas. Id. at ¶ 88. USCIS accepted Forms I-485 for both applicants. Id. at ¶ 86.

The priority date for Monisha Gupta and Swapnil Gadkari's applications is November 7, 2012. Gupta Am. Compl. ¶ 77, 79. Gupta was initially approved for an EB2 visa that was not current. Id. at ¶ 80. In an attempt to receive a current visa, Gupta's employer filed another immigrant visa application, and Gupta was approved to file an AOS application based on an available EB3 visa. Id. at ¶¶ 81-84. Both Gupta and Gadkari filed Forms I-495 on October 30,

---

[7] The Patels' Amended Complaint is Doc. No. 46 in case number 4:22-cv-11128. The Gupta Plaintiffs' Amended Complaint is Doc. No. 13 in case number 1:22-cv-11374. For readability, the court has omitted the document numbers and refers to the complaints as the Patel Am. Compl. or Gupta Am. Compl.

2020, at which time there were immediately available immigrant visas for them. Id. at ¶ 85. USCIS accepted the Forms I-485 for both applicants. Id. at ¶ 85.

All four Forms I-485 have been assigned for processing at USCIS's Texas Service Center. Patel Am. Compl. ¶ 87; Gupta Am. Compl. ¶ 86. And all Plaintiffs have provided category three biometrics to USCIS related to their AOS applications. Patel Am. Compl. ¶ 89; Gupta Am. Compl. ¶ 88. USCIS has provided all Plaintiffs with the interim benefits conferred by filing Form I-485, including work and travel authorization. Patel Am. Compl. ¶ 90; Gupta Am. Compl. ¶ 89.

Plaintiffs assert that they have been waiting for a decision on their applications for more than twice as long as the median processing time for such applications. Patel Am. Compl. ¶ 185; Gupta Am. Compl. ¶ 187. They have not received any indication that their Forms I-485 have been transferred to a local field office for an interview. Patel Am. Compl. ¶ 95; Gupta Am. Compl. ¶ 94. At the time of the amended complaints, USCIS reported that the Texas and Nebraska Service Centers adjudicated 80% of their employment-based Forms I-485 in 18 months. Patel Am. Compl. ¶ 49; Gupta Am. Compl. ¶ 49. Plaintiffs assert that if the Texas and Nebraska Service Centers continue at this rate, it would take approximately seven years for their Forms I-485 to receive a final adjudication. Patel Am. Compl. ¶ 63; Gupta Am. Compl. ¶ 63.

Plaintiffs assert that they have been harmed by this delay. First, they report experiencing significant mental anguish and suffering due to the uncertainty of their status in the United States. Patel Am. Compl. ¶ 100; Gupta Am. Compl. ¶ 99. Second, Plaintiffs assert that they cannot travel to see their families in India because they could suddenly be called to appear for an adjustment of status interview or respond to requests for evidence, and because their travel authorization extensions remain pending. Patel Am. Compl. ¶ 101; Gupta Am. Compl. ¶ 100.

Third, Plaintiffs assert that the delay in adjudication has stunted their professional development because they are tied to their H-1B employers. Patel Am. Compl. ¶ 102; Gupta Am. Compl. ¶ 101. Until they receive permanent status, Plaintiffs are unable to "open a business, create jobs, and continue to build their credentials." Patel Am. Compl. ¶ 102; Gupta Am. Compl. ¶ 101.

## II.    Standard of Review

Defendants seek to dismiss Plaintiffs' complaints under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants contend that this court lacks subject matter jurisdiction because (1) the operative statute strips this court of jurisdiction to hear Plaintiffs' claims; (2) Plaintiffs lack standing to bring their claims; and (3) at least one of Plaintiffs' claims is moot.

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Likewise, Rule 12(b)(1) is the proper vehicle for a motion to dismiss for lack of constitutional standing, see Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012), and a motion to dismiss for mootness, see Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003) (evaluating mootness as an issue of subject matter jurisdiction).

Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal based on the pleadings is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.   Discussion

### A. *Subject Matter Jurisdiction*

#### 1.   Mootness

Defendants argue that this court lacks subject matter jurisdiction because aspects of Plaintiffs' complaints are moot. Memorandum of Law in Support of Defendants' Motion to Dismiss, in Opposition to Plaintiffs' Partial Motion for Summary Judgment, and in Support of Defendants' Motion for Summary Judgment ("Def.'s Mem.") 17 [Doc. No. 63]. Defendants contend that Plaintiffs have failed to show a live case or controversy currently exists because Plaintiffs have asked the court to issue an order reserving FY 2022 EB2 visas, but USCIS and DOS have already allocated EB2 and EB3 visa numbers at the annual limits established by Congress for FY 2022. Id. at 18. Moreover, even if visas were still available, courts have cast doubt on whether USCIS can be ordered to reserve a future visa, as Plaintiffs request. Id.

Defendants also contend that the Patel Plaintiffs' unreasonable delay claim is moot because USCIS has acted on Nikunj Patel's application by issuing a Request for Evidence. Id.

But where Plaintiffs' applications remain pending and Plaintiffs could amend or refile their Complaints to seek visas for the current or upcoming fiscal year, the court declines to grant Defendants' motion to dismiss on mootness grounds.

    2.   Standing

Defendants argue that Plaintiffs lack standing. Def.'s Mem. 17 [Doc. No. 63]. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560 (1992). "'[T]he irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan, 504 U.S. at 560-1).

Plaintiffs have alleged that they are harmed by Defendants' policies because, inter alia, they remain tethered to their H-1B employers. This is not trivial, and the court credits Plaintiffs' claims of lost professional and economic opportunity where Plaintiffs must remain with their current employers to not lose their place in line. Plaintiffs allege that this harm is the result of Defendants' allegedly unlawful interpretation of 8 U.S.C. § 1255. And Plaintiffs contend that an order from this court that USCIS adjudicate their pending AOS applications would alleviate the harm incurred by waiting for adjudication. The court finds this sufficient to establish standing at the pleading stage.

    3.   Jurisdiction Stripping under 8 U.S.C. § 1252(a)(2)(B)

Defendants contend that both subsections of 8 U.S.C. § 1252(a)(2)(B) strip this court of

11

jurisdiction to hear Plaintiffs' claims. Def.'s Mem. 13 [Doc. No. 63]. The APA bars federal courts from reviewing agency actions if "statutes preclude judicial review" or the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). But when a statue is "reasonably susceptible to divergent interpretation," the court must "adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." Kucana v. Holder, 558 U.S. 233, 251 (2010) (quoting De Martinez v. Lamagno, 515 U.S. 417, 434 (1995)). "It therefore takes clear and convincing evidence to dislodge the presumption" of judicial review. Id. at 252 (cleaned up).

The court considers each subsection in turn.

    a.   Section 1252(a)(2)(B)(i)

Under 8 U.S.C. § 1252(a)(2)(B)(i), "[n]o court shall have jurisdiction to review—. . . any judgment regarding the granting of relief under section . . . 1255 of this title [adjustment of status of nonimmigrant to that of person admitted for permanent residence]." Defendants assert that because § 1252(a)(2)(B)(i) "'prohibits review of any judgment regarding the granting of relief under § 1255 and other enumerated provisions,'" this court cannot review Plaintiffs' claims. Def.'s Mem. at 14-15 [Doc. No. 63] (quoting Patel v. Garland, 142 S. Ct. 1614, 1622 (2022)). Defendants contend that Patel requires an expansive reading of the term "judgment" that should extend here to include USCIS's decision to hold the Plaintiffs' AOS applications in abeyance until new immigrant visas become immediately available.

Plaintiffs counter that USCIS's failure to act on Plaintiffs' AOS applications is not a "judgment" of the type that § 1252(a)(2)(B)(i) precludes courts from reviewing. Plaintiffs' Reply in Support of Their Motion for Partial Summary Judgment and Response in Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment ("Pl.'s Resp.") 2-4 [Doc.

No. 64]. In their view, "[i]f there is no action, there is no judgment." Id. at 3. They contend that

Patel requires a "judgment" be one "regarding the granting of relief," as the statute requires,

which inaction cannot do. Id. at 3. Finally, they point out that § 1252(a)(2)(B)(i) uses the word

"judgment," a term the APA does not define, instead of "agency action," a term it does define as

including a "failure to act." 5 U.S.C. §551(13). Plaintiffs contend that the absence of the term

"agency action" in § 1252(a)(2)(B)(i) indicates that Congress did not intend to preclude review

of unlawful withholding and unreasonable delay claims. Pl.'s Resp. 3 [Doc. No. 64].

In Patel, the plaintiff applied to USICS for an adjustment of status to lawful permanent

residence under § 1255. Patel, 142 S. Ct. at 1619. USCIS determined that Patel had previously

misrepresented his United States citizenship in his application for a driver's license and denied

his application. Id. at 1619-20. Several years later, the Department of Homeland Security

("DHS") initiated removal proceedings against Patel, and the immigration judge, after

confirming USCIS's fact-findings, denied his application for adjustment of status and ordered his

removal. Id. at 1620-21.

The question before the Court was whether a factual determination by an immigration

judge—in that case, whether Patel's testimony that he had marked himself as a citizen on his

license application by accident was credible—is a "judgment regarding the granting of relief"

under § 1255 for purposes of § 1252(a)(2)(B)(i). Court-appointed amicus argued

> that 'judgment' means any authoritative decision. See Webster's Third New
> International Dictionary 1223 (1993) ("a formal utterance or pronouncing of an
> authoritative opinion after judging," or "an opinion so pronounced"); 8 Oxford
> English Dictionary 294 (2d ed. 1989) ("[t]he pronouncing of a deliberate opinion
> upon a person or thing, or the opinion pronounced"). Under this broad definition,
> § 1252(a)(2)(B)(i)'s prohibition "encompasses any and all decisions relating to
> the granting or denying" of discretionary relief. Factual findings fall within this
> category, amicus says, so the courts lack jurisdiction to review them.

142 S.Ct. at 1621 (citing Brief for Court-Appointed Amicus Curiae 22–23). The Court determined that "Amicus' interpretation is the only one that fits § 1252(a)(2)(B)(i)'s text and context. The provision does not restrict itself to certain kinds of decisions. Rather, it prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions." Id. at 1622 (emphasis in original). The Court concluded that "the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment." Id. The Court noted that § 1252(a)(2)(D), which preserves review of constitutional claims and questions of law— but not factual questions—upon a petition for review with an appropriate court of appeals, reinforced its conclusion. Id. at 1623.

Patel expressly did not consider the "reviewability of [USCIS] decisions" where the petitioner is not involved in removal proceedings, but left open the possibility that Congress "intend[ed] to close th[e] door" on judicial review of USCIS adjustment decisions. Id. at 1626. Where the question has come before lower courts since Patel, most have found that § 1252(a)(2)(B)(i) precludes review of USCIS's denial of an adjustment application. See Britkovyy v. Mayorkas, 60 F. 4th 1024, 1029 (7th Cir. 2023); Doe v. U.S. Dep't of Homeland Sec., 2023 WL 2564856, at *2-3 (11th Cir. Mar. 20, 2023); Abuzeid v. Mayorkas, 62 F.4th 578, 585-6 (D.C. Cir. 2023); Hernandez v. Jaddou, 65 F.4th 265, 266 n.1 (5th Cir. 2023) (in dicta). The First Circuit has not weighed in on this question.

But Plaintiffs do not ask this court to review USCIS's decision on their adjustment applications. Rather, they seek review of the *lack* of any decision from USCIS. Accordingly, the court agrees with Plaintiffs that here, where there has been no "authoritative opinion after judging," the inaction in this case does not amount to a "judgment" for purposes of

§ 1252(a)(B)(i). To be sure, Patel takes an expansive view of 1252(a)(2)(B)(i), but it does not, by

any reading, require this court to interpret "judgment" as "inaction." Because Plaintiffs here

challenge USCIS's failure to adjudicate their AOS applications, the court finds that its subject

matter jurisdiction over Plaintiffs' unlawful withholding claims is not stripped by

§ 1252(a)(2)(B)(i).[8]

        b.     Section 1252(a)(2)(B)(ii)

Under 8 U.S.C. § 1252(a)(2)(B)(ii), "[n]o court shall have jurisdiction to review—. . .

any other decision or action of the Attorney General or the Secretary of Homeland Security" the

authority for which is committed to their discretion. Defendants argue that § 1252(a)(2)(B)(ii)

bars judicial review of USCIS and DOS's decisions about how to adjudicate Adjustment of

Status applications. Def.'s Mem. at 16-17 [Doc. No. 63]. They contend that 8 C.F.R.

§ 245.2(a)(5)(ii), which requires DOS to allocate a visa before USCIS approves an AOS

application, is a regulation prescribed within the discretion § 1255(a) grants. Id. at 16-17.

Defendants argue that even if courts can review challenges to the pace of Adjustment of Status

adjudication, Plaintiffs in this case challenge the actual adjudication process, and that challenge

is precluded. Id. at 16-17.

Plaintiffs assert that § 1252(a)(2)(B)(ii) does not clearly preclude review of inaction. Pl.'s

Resp. 4 [Doc. No.  64]. They argue further that even if § 1255(a) grants the Secretary discretion

in adjusting a person's status, the statute does not grant USCIS the discretion to refuse to

adjudicate those applications altogether. Id. at 5.

---

[8] Defendants' proffered cases to the contrary are inapposite. See Rabinovych v. Mayorkas, 624 F. Supp. 3d 19, 23 (D. Mass. 2022) (plaintiff challenged USCIS's denial of AOS application); Badra, v. Jaddou, 2022 WL 4376331, at *1–2 (S.D. Fla. Sept. 22, 2022) (same); Doe v. Mayorkas, 2022 WL 4450272, at *3 (D. Minn. Sept. 23, 2022) (same); Garcia v. USCIS, 2022 WL 3349151, at *9 (N.D. Tex. Aug. 12, 2022) (same).

The parties agree that § 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to consider a challenge to the pace of AOS adjudication. See Tang v. Chertoff, 493 F. Supp. 2d 148, 153 (D. Mass. 2007) ("The subchapter at issue specifies only that it is within the discretion of the Attorney General to adjust one's status; it does not address, much less specify any discretion associated with, the pace of application processing."). But Defendants argue that "Plaintiffs do more than simply challenge the pace of USCIS' adjudication of their AOS applications. They instead argue that USCIS' decision regarding their eligibility for adjustment and the way adjustment applications are adjudicated are unlawful and subject to judicial review." Def.'s Mem. 16-17 [Doc. No. 63].

The question, then, is whether § 1252(a)(2)(B)(ii) precludes review of USCIS's policy of holding AOS applications without immediately visas in abeyance. District courts addressing the same claims presented here have split on this question. Some have found that review is precluded. See Tulsiyan v. Jaddou, 2023 WL 4879913, at *3 (S. D. Fla. Jul. 26, 2023); Kale v. Jaddou, 2023 WL 4939367, at *6-7 (E. D. N. C. Aug. 2, 2023); Bansal v. U.S. Citizenship and Immigration Servs., 2021 WL 4553017 (D. Neb. Oct. 5, 2021); Singh v. Holder, 2015 WL 1399055 (D. N. J. Mar. 25, 2015). Others find it is not. See Tista v. Jaddou, 577 F. Supp. 3d 1219 (D. N. M. 2021); Doe v. Mayorkas, 2021 WL 5013738 (E. D. Pa. Oct. 28, 2021); Pulido v. Cuccinelli, 497 F. Supp. 3d 79, 89 (D. S. C. 2020).

Plaintiffs rely on the Supreme Court's opinion in Kucana v. Holder for their argument that § 1252(a)(2(B)(ii)'s plain language only precludes review of "'specified' certain decisions []' in the Attorney General and the Secretary of Homeland Security's discretion in the relevant subchapter." Pl.'s Resp. 5 [Doc. No. 64]. In Kucana, petitioner sought review of a decision that a lower court lacked subject matter jurisdiction based on a federal regulation granting discretion on

motions to reopen asylum cases to the Board of Immigration Appeals. Kucana, 558 U.S. at 236-39. The Court held that § 1252(a)(2)(B)(ii) applied only to discretion specified by statute, not regulations. Id. at 248; accord Bernardo ex rel. M & K Engineering, Inc. v. Johnson, 814 F.3d 481, 492 (1st Cir. 2016).

Kucana does not help Plaintiffs where the purported discretion is conferred to the Secretary by § 1255 itself. Accordingly, the animating question is whether it is contrary to the language of § 1255 that USCIS and DOS require an immediately available visa both when an AOS application is filed and when it is adjudicated. If it is, then the Secretary has acted outside of his discretion by implementing a policy that is unlawful. If it is not, then the court agrees with those courts that have found USCIS's decision to hold in abeyance applications that lack an immediately available visa for adjudication is an action within the Secretary's discretion and thus unreviewable under § 1252(a)(2)(B)(ii). That inquiry is identical to Plaintiffs' theory of unlawful withholding, so the court considers the questions together.

B.    *Unlawful Withholding—Failure to State a Claim*

Plaintiffs allege that USCIS's policy of requiring a visa number to be available both at the time an AOS application is made and at the time it is adjudicated is contrary to the language of § 1255(a). According to Plaintiffs, § 1255 requires only that a visa be immediately available at the time of application, and USCIS and DOS's policy of requiring immediate availability at the time of adjudication is an ultra vires refusal to adjudicate AOS applications. Pl.'s Resp. 14 [Doc. No. 64]. Plaintiffs argue that Congress specifically rejected Defendants' interpretation of § 1255 in 1976, when it amended § 1255(a) to remove the requirement that immigrant visas be immediately available at the time of approval. Id. at 9-10. Plaintiffs also contend that USCIS

could resolve any conflicts with the worldwide visa limits and statutory country caps by limiting the number of Forms I-485 that are accepted for filing each fiscal year. Id. at 7-8, 10.

Defendants argue that § 1255(a) does not require USCIS to adjudicate AOS applications when there are no available immigrant visa numbers. Def.'s Mem. 22 [Doc. No. 63]. While conceding that § 1255(a) is silent as to any requirement for an available visa number at the time of adjudication, Defendant argues that § 1255(b), which requires DOS to reduce the number of available visas when USCIS approves an adjustment of status, "unambiguously require[s]" an immigrant visa be available at the time of AOS adjudication and approval. Id. Defendants contend that Plaintiffs' reading of § 1255(a) is unworkable in the context of the rest of the statute. "Plaintiffs' proposed interpretation would allocate a visa to an AOS applicant at the time of filing and would conflict with other statutory provisions by allowing the agencies to exceed the worldwide levels (as well as category and country limitations) of immigration by removing limits on AOS applications." Id. at 25. Defendant also disputes Plaintiffs' interpretation of the relevant legislative history. Id. at 26-28.

"In an APA challenge to federal agency inaction it must be shown that [the agency] 'failed to take a discrete agency action that it is required to take.'" Scarborough Citizens Protecting Res. v. U.S. Fish and Wildlife Serv., 674 F.3d 97, 99 (1st Cir. 2012) (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 55 (2004) (explaining that APA does not support "broad programmatic attack[s]" on agency policies or programs)). Such discrete agency action must be "demanded by law." Norton, 542 U.S. at 65.

### 1.  The Language of the Statute

Section 1255 does not contain a discrete command that USCIS adjudicate an AOS application when there are no available visas to be allocated to an applicant. Section 1255(a)

requires that an applicant "is eligible to receive an immigrant visa" and "an immigrant visa is immediately available to him at the time his application is filed." Section 1255(b) then requires that when an application for adjustment of status is approved, "the Secretary of State shall reduce by one the number of the preference visas authorized to be issued under sections 1152 and 1153 of this title within the class to which the [noncitizen] is chargeable for the fiscal year then current." Sections 1152 and 1153 establish limits on the number of EB preference visas available in a given fiscal year.

Section 1255(a) states further that a non-citizen's status "may be adjusted by the [Secretary of Homeland Security] in his discretion and under such regulations as he may prescribe [if] . . . an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a). The statute creates a prerequisite to adjustment of status (i.e., that a visa is immediately available at the time of filing), but it allows the Secretary discretion in whether to adjust status, including discretion to additionally require an immediately available visa at adjudication and approval.

Though USCIS and DOS are directed to adjudicate AOS applications generally, the language of the statute does not require adjudication of an AOS application where no appropriate immigrant visa is available for the applicant. Thus, based on the statutory language, USCIS's decision to hold Plaintiffs' applications in abeyance until a visa becomes available to them is a discretionary act, rather than a failure to perform a discrete agency action of the kind that supports an unlawful withholding claim. See Museboyina v. Jaddou, 2022 WL 4608264, at *5 (D. Neb. Sep. 30, 2022) (explaining that "neither the supposed 'retrogression policies' nor any other action of the agencies is responsible for the requirement that a visa must be available at the time an application is approved as well as at the time the application is made. Consequently, the

agencies have not 'unlawfully withheld' a decision when no visas are available at the time of

approval.").

    2.   Legislative History of Section 1255

Consideration of the legislative history of § 1255 does not alter this conclusion. Section

1255 of the INA as enacted in 1952 read:

> The status of a[] [noncitizen] who was lawfully admitted to the United States
> as a bona fide nonimmigrant and who is continuing to maintain that status may
> be adjusted by the Attorney General in his discretion . . . to that of a[]
> [noncitizen] lawfully admitted for permanent residence . . . if (1) the
> [noncitizen] makes application for adjustment, (2) the [noncitizen] is
> admissible to the United States for permanent residence under this Act, (3)
> **a[n] [] immigrant visa was immediately available to him at the time of his
> application** for adjustment, (4) **a[n] [] immigrant visa is immediately
> available to him at the time his application is approved**, and (5) if claiming
> a non-quota status under section 101 (a)(27)(A) he has been in the United
> States for at least one year prior to acquiring that status.

The Immigration and Nationality Act of 1952, P.L. 82-414, 66 Stat. 163 (June 27, 1952)

(emphasis added).

In 1976, Congress eliminated the provision requiring that a visa be available at the time

the application is approved. See H.R. 94-1553, Immigration and Nationality Act Amendments of

1976, p. 27 (1976). The amended version of the provision reads:

> The status of an alien who was inspected and admitted or paroled into the United
> States may be adjusted by the Attorney General, in his discretion and under such
> regulations as he may prescribe, to that of a[] [noncitizen] lawfully admitted for
> permanent residence if (1) the [noncitizen] makes an application for such
> adjustment, (2) the [noncitizen] is eligible to receive an immigrant visa and is
> admissible to the United States for permanent residence, and (3) **an immigrant
> visa is immediately available to him at the time his application is filed**.

H.R. 94-1553, Immigration and Nationality Act Amendments of 1976, p. 27 (1976)

(emphasis added).

Plaintiffs contend that this amendment shows a "clear rejection" of USCIS and

DOS's policy of requiring an immediately available visa at both the time of application

and adjudication. Pl.'s Resp. 9 [Doc. No. 64]. They highlight a 1976 House Report proposing a revision to the AOS provision "designat[ing] the date used in determining the availability of a visa number as the date the application is filed, rather than the approval date." Patel Am. Compl. ¶¶ 20-21 [Doc. No. 46].

Defendants counter that shortly after the 1976 amendment, the agencies responsible for implementing the INA disavowed the argument that an AOS could be granted if an immigrant visa was available solely at the time the application was made. In 1979, counsel for the Immigration and Naturalization Service ("INS")[9] issued an opinion stating that INS could continue to require that visas be immediately available at approval as well as at filing despite the amendment. Patel Am. Compl., Ex. A (INS, Legal Op. No. 79-19 (Jul. 16, 1979) [Doc. No. 46-1]. The opinion reasoned that Congress had not intended the amendment to disrupt the adjustment processing procedures used by the INS, but rather to "codify the actual practice" that INS had developed. Id. at 2.[10]

---

[9] In 2003, the INS stopped being an operative agency and was replaced by USCIS, Immigrations and Customs Enforcement (ICE) and Customs and Border Protection (CBP).

[10] The INS Opinion relied in part on a Board of Immigration Appeals ("BIA") decision, Matter of Huang, 16 I. & N. Dec. 358 (BIA 1977). In Huang, the BIA discussed the change in § 245's language regarding the requirements of visa availability. The Board wrote: "[T]he statute, prior to its amendment, referred to visa availability at the time an application is approved. In view of large backlogs of applications, however, months often elapsed between the date of filing and the date of approval. A[] [noncitizen] might establish eligibility in all respects, including visa availability, at the date he filed his application only to see the quota close before the Service was able to act on his application. In an apparent effort to protect the alien in this situation, the Service instituted the [procedure that allows for a properly filed AOS application with no immediately available visa to be held in abeyance until a visa number becomes available]. We note that under the amended section 245(a)(3), the [noncitizen] only need establish the availability of an immigrant visa at the time the application is "filed," not "approved" as the subsection previously read. Thus, the amendment appears to codify the actual practice which developed . . . ." Id., at *3 n. 1.

The opinion explained that because § 1255(a)(2) continued to require that an AOS applicant be eligible to receive an immigrant visa, INS "[maintained] the position that an immigrant visa must be <u>actually</u> allocated to the applicant before his application can be granted." <u>Id.</u> Because INS lacked statutory authority to adjust the status of a noncitizen if a visa number could not actually be allocated to them, this allocation could not occur only when the application was filed or it "could result in numbers allocated to those who are eventually denied adjustment, either on grounds of eligibility or discretion, being lost forever." <u>Id.</u>

The court agrees with Defendants that the legislative history does not command a finding that USCIS and DOS's retrogression policy is contrary to the statute. Essentially, § 1255(a) establishes eligibility for an adjustment of status, but it does not create an entitlement to a positively adjudicated adjustment of status application. Receipt of a visa is still dependent, per § 1255(b), on the ability of the Secretary of State to reduce the number of available visas by one, and where no available visas exist, that application cannot be adjudicated. <u>See</u> <u>Hernandez v. Ashcroft</u>, 345 F. 3d 824, 849 (9th Cir. 2003) ("Although the visa need only be available at the time of filing, adjustment cannot actually be granted unless a number is also available at the time of adjustment. Should the numbers meanwhile fall behind and become unavailable for the applicant's priority date, adjustment is postponed . . . until the number does become available."); <u>see also</u> <u>Shamsian, et al., v. Ilchert</u>, 534 F. Supp. 178, 183 n.5 (N.D. Cal. 1982) (the 1976 amendment "appears to allow the INS to accept the application at an earlier date in some cases to avoid hardship, but . . . does not give [an applicant] the right to become a permanent resident at that time."). Consequently, it is not contrary to § 1255 for USCIS and DOS to require a visa be immediately available when an application is adjudicated.

Because USCIS's and DOS's practice of requiring immediately available visas at both the time of application and an application's adjudication does not contradict § 1255, it is an act within the Secretary's discretion to hold an AOS application in abeyance until an immigrant visa becomes immediately available. Thus, under § 1252(a)(2)(B)(ii), this court lacks jurisdiction to review Plaintiffs' claims. And, because the action is within the agency's discretion, Plaintiffs are unable to state an unlawful withholding claim under APA § 706.

Accordingly, the court grants Defendants' Motion to Dismiss [Doc. No. 59] as to Plaintiffs' unlawful withholding claims (Counts I and II).

C.    *Unreasonable Delay*

Plaintiffs' counsel conceded at oral argument on the pending motions that if the court were to find for Defendants on the unlawful withholding claim, it could not reach Plaintiffs' unreasonable delay claim because a lawful reason to refuse to adjudicate an AOS application is per se not an unreasonable delay. Given this concession and the court's finding that Plaintiffs have failed to state a claim on their first two causes of action for unlawful withholding, Plaintiffs' third cause of action for unreasonable delay is also dismissed.

## IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 59] is GRANTED. Defendants' Motion for Summary Judgment [Doc. No. 58], Plaintiffs' Motion for Summary Judgment [Doc. No. 55], and Plaintiffs' Rule 56(d) Motion [Doc. No. 65] (also filed in Gupta, et al. v. Jaddou, et al., 1:22-cv-11374, as Doc. No. 19 and Doc. No. 21) are DISMISSED as moot.

IT IS SO ORDERED

September 27, 2023                                    /s/Indira Talwani
                                                     United States District Judge